## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____ 26-mj-03259-Louis _____

IN RE SEALED COMPLAINT

_____/

### CRIMINAL COVER SHEET

FILED BY_____ **KAN** _____D.C.

**Jul 18, 2026**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?  No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?  No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

Respectfully Submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: /s/ Abbie D. Waxman
    Abbie D. Waxman
    Assistant United States Attorney
    Florida Bar No.: 109315
    99 Northeast Fourth Street
    Miami, Florida 33132
    Tel: (305) 961-9240
    Abbie.Waxman@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. __26-mj-03259-Louis__

IN THE MATTER OF THE EXTRADITION
OF TRISTAN TATE,

_____/

**COMPLAINT FOR PROVISIONAL ARREST**
**WITH A VIEW TOWARDS EXTRADITION**
**(18 U.S.C. § 3184)**

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1.     In this matter, I represent the United States in fulfilling its treaty obligation to The United Kingdom of Great Britain and Northern Ireland ("the United Kingdom").

2.     There is an extradition treaty in force between the United States and the United Kingdom: Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, U.S.-U.K., Mar. 31, 2003, S. Treaty Doc. No. 108-23 (2004) (the "2003 Treaty"), and related Exchanges of Letters, *as amended by* the Instrument as contemplated by Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union signed June 25 2003, as to the application of the Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003, U.S.-U.K., Dec. 16, 2004, S. Treaty Doc. No. 109-14 (2006) (the "Instrument"), with Annex (the "Annex") reflecting the integrated text of the operative provisions of the 2003 Treaty and the Instrument (collectively, the "Treaty").

1

3.     The Treaty provides in Article 12 for the provisional arrest and detention of alleged fugitives pending the submission of a formal request and supporting documents.

4.     In accordance with Article 12 of the Treaty, the Government of the United Kingdom has asked the United States for the provisional arrest of Tristan Tate ("TATE" or the "fugitive") with a view toward his extradition.

5.     According to information the Government of the United Kingdom has provided, TATE is accused of rape, in violation of Section 1 of the Sexual Offences Act of 2003, and assault occasioning actual bodily harm, in violation of Section 47 of the Offenses Against the Person Act of 1861.[1]

6.     These offenses were committed within the jurisdiction of the United Kingdom.  On January 19, 2024, Senior District Judge Paul Goldspring of the Westminster Magistrates Court signed a warrant for TATE's arrest.  The warrant remains valid and enforceable.

7.     Based on its investigation, the UK alleges the following facts in support of its arrest warrant and provisional arrest request:

    a.     Complainant reported to UK authorities that on multiple occasions between April 1, 2012, and December 26, 2013, TATE, with whom she was in a long-term romantic relationship, raped her both vaginally and anally and assaulted her to the point of physical injury at his apartment in Luton, England.

    b.     Complainant told authorities that, during the specified time period, TATE regularly choked Complainant to the point that she was unconscious and simultaneously penetrated her vagina with his penis.  After she would lose

---

[1] The United States is seeking a warrant for TATE's provisional arrest on an urgent basis based only on these charges, but doing so is without prejudice to proceeding on additional charges when the UK's formal request for extradition has been received and reviewed by the U.S. Department of State and is presented to the Court.

consciousness, TATE would forcefully slap Complainant's face to wake her up, and upon awaking, Complainant would find that TATE was penetrating her anus with his penis.

c.     Complainant conveyed that she made it clear to TATE that she did not consent to being anally penetrated while unconscious.  Nonetheless, according to her, TATE repeated this behavior multiple times over the course of more than a year and a half.

d.     Complainant also notified authorities that, during one of these instances, TATE struck her in the face, causing a black eye.  She further stated that she sustained marks on her skin from being slapped by TATE on other occasions.

e.     Complainant further alleged that, during this same time period, TATE hit her with a belt on multiple occasions, which caused serious bruising and welts on her buttocks and legs.  Complainant told authorities that, when TATE hit her with a belt, she would scream for him to stop, but he often would not stop.

f.     Complainant reported an additional incident of nonconsensual sexual intercourse with TATE that she said took place on or about December 24, 2012.

g.     On that date, TATE picked Complainant up from the train station and drove her to his mother's house in Luton, England.  After arriving at the home, TATE pushed Complainant onto a mattress, pinned her down, and penetrated her vagina with his penis without her consent.  TATE simultaneously used his hand to hit and grab onto Complainant's buttocks approximately five (5) or six (6) times, causing bruising.  According to UK authorities, Complainant did not have the choice to consent, and she reported that TATE did not check whether she consented.

h.      Complainant identified TATE as the person who committed these offenses based on her longstanding relationship with him.  She also told authorities that she could identify TATE from television and social media.

8.     Article 2 of the Treaty covers the offenses for which TATE's extradition is sought.

9.     According to the U.S. Marshals Service, TATE's brother is scheduled to co-host a boxing event in Miami, Florida, on July 18, 2026.  On July 17, 2026, authorities observed TATE in Miami, Florida.

10.    The Government of the United Kingdom has represented that it will submit a formal request for extradition, supported by the documents the Treaty specifies within the time the Treaty requires.

11.    TATE would likely flee if he learned of the existence of a warrant for his arrest.

(Intentionally left blank)

4

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with 18 U.S.C. § 3184 and the Treaty, and that this complaint and the warrant be placed under the seal of the Court, except as disclosure is needed for its execution, until such time as the warrant is executed.

Respectfully Submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: */s/ Abbie D. Waxman*
Abbie D. Waxman
Assistant United States Attorney
Florida Bar No.: 109315
99 Northeast Fourth Street
Miami, Florida 33132
Tel: (305) 961-9240
Abbie.Waxman@usdoj.gov

Sworn to before me and subscribed via FaceTime this __July 18__ day of 2026, at _____Miami, Florida_____.

HONORABLE LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

5

The Consular Directorate of the Foreign and Commonwealth Office presents its compliments to the Embassy of the United States of America and has the honour to refer to the Embassy's Note No. 120 of 16 December 2004 which reads as follows:

"The Embassy of the United States of America at London, England, presents its compliments to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs and has the honour to refer to the Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed June 25, 2003, as to the application of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003 (the "2003 Extradition Treaty").

Having been informed by the Government of the United Kingdom of Great Britain and Northern Ireland that it will be unable to apply Article 5(2) of the Agreement on Extradition between the United States of America and the European Union, as set forth in Article 9 of the Annex to the Instrument, relating to authentication of extradition documents, until a corresponding change is made in its domestic law governing extradition, the Embassy has the honour to propose on behalf of the United States Government as follows:

Article 5(2) of the Agreement on Extradition between the United States of America and the European Union, as set forth in Article 9 of the Annex to the Instrument, shall not be applied until the United States of America and the Government of Great Britain and Northern Ireland indicate in a subsequent exchange of notes that the required internal procedures have been completed. Until that time, the parties agree to apply the procedure for authentication of extradition documents set forth in Article 9 of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003, upon its entry into force. The Government of the United Kingdom of Great Britain and Northern Ireland shall undertake to seek the necessary legislation at the earliest possible time.

The Embassy also wishes to confirm that two exchanges of letters related to the 2003 Extradition Treaty and done simultaneous with its signature shall remain the understandings of the Governments with respect to this Instrument, until such time as they may agree otherwise.

If the foregoing is acceptable to your Government, the Embassy has the honour to propose that this Note and your Note in reply shall constitute an agreement between our two Governments, which shall enter into force on the date of entry into force of the Instrument.

The Embassy avails itself of this opportunity to express to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs the renewed assurance of its highest consideration."

In reply, the Foreign and Commonwealth Office has the honour to confirm that the proposal set out in the Embassy's Note is acceptable to the Government of the United Kingdom of Great Britain and Northern Ireland and that the Embassy's Note, and this Reply, shall constitute an agreement between the two Governments which shall enter into force on the date of entry into force of the Instrument.

The Consular Directorate of the Foreign and Commonwealth Office avails itself of this opportunity to renew to the Embassy of the United States the assurances of its highest consideration.

London
16 December 2004

**EMBASSY OF THE
UNITED STATES OF AMERICA**

No. 120

The Embassy of the United States of America at London, England, presents its compliments to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs and has the honor to refer to the Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed June 25, 2003, as to the application of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003 (the "2003 Extradition Treaty").

Having been informed by the Government of the United Kingdom of Great Britain and Northern Ireland that it will be unable to apply Article 5(2) of the Agreement on Extradition between the United States of America and the European Union, as set forth in Article 9 of the Annex to the Instrument, relating to authentication of extradition documents, until a corresponding change is made in its domestic law governing extradition, the Embassy has the honor to propose on behalf of the United States Government as follows:

Article 5(2) of the Agreement on Extradition between the United States of America and the European Union, as set forth in Article 9 of the Annex to the Instrument, shall not be applied until the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland indicate in a subsequent exchange of notes that the required internal procedures have been completed. Until that time, the parties agree to apply the procedure for authentication of extradition documents set forth in Article 9 of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003, upon its entry into force. The Government of the United Kingdom of Great Britain and Northern Ireland shall undertake to seek the necessary legislation at the earliest possible time.

The Embassy also wishes to confirm that two exchanges of letters related to the 2003 Extradition Treaty and done simultaneous with its signature shall remain the understandings of the Governments with respect to this Instrument, until such time as they may agree otherwise.

If the foregoing is acceptable to your Government, the Embassy has the honor to propose that this Note and your Note in reply shall constitute an agreement between our two Governments, which shall enter into force on the date of entry into force of the Instrument.

The Embassy avails itself of the opportunity to express to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs the renewed assurance of its highest consideration.

Embassy of the United States of America
London, England. December 16, 2004



Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003, as to the application of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed 31 March 2003

1.     As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the Extradition Agreement"), the Governments of the United States of America and the United Kingdom of Great Britain and Northern Ireland acknowledge that, in accordance with the provisions of this Instrument, the Extradition Agreement is applied in relation to the bilateral Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed 31 March 2003 (hereafter "the 2003 Extradition Treaty") under the following terms:

a)     Article 5(1) of the Extradition Agreement shall be applied as set forth in Article 8(1) and 12(4) of the Annex to this Instrument to provide for the mode of transmission of the extradition request and supporting documents;

b)     Article 5(2) of the Extradition Agreement shall be applied as set forth in Article 9 of the Annex to this Instrument to provide for the requirements concerning certification, authentication or legalization of the extradition request and supporting documents;

c)     Article 7(1) of the Extradition Agreement shall be applied as set forth in Article 12(4) of the Annex to this Instrument to provide for an alternative method for transmission of the request for extradition and supporting documents following provisional arrest;

d)     Article 8(2) of the Extradition Agreement shall be applied as set forth in Article 10(2) of the Annex to this Instrument to provide for the channel to be used for submitting supplementary information;

e)     Article 10 of the Extradition Agreement shall be applied as set forth in Article 15 of the Annex to this Instrument to provide for the decision on requests made by several States for the extradition or surrender of the same person; and

f)     Article 14 of the Extradition Agreement shall be applied as set forth in Article 8 bis of the Annex to this Instrument to provide for consultations where the Requesting State contemplates the submission of particularly sensitive information in support of a request for extradition.

2.     The Annex reflects the integrated text of the operative provisions of the 2003 Extradition Treaty and the Extradition Agreement that shall apply upon entry into force of this Instrument.

3.a)   This Instrument shall apply to the United States of America and to Great Britain and Northern Ireland. Subject to subparagraph b), the application of the 2003 Extradition Treaty to the Channel Islands, the Isle of Man, and any other territory of the United Kingdom to which

1

the 2003 Extradition Treaty may apply in accordance with its terms, shall remain unaffected by the Extradition Agreement and this Instrument.

b)      This Instrument shall not apply to any territory for whose international relations the United Kingdom is responsible unless the United States of America and the European Union, by exchange of diplomatic notes duly confirmed by the United Kingdom in accordance with Article 20(1) (b) of the Extradition Agreement, agree to extend its application thereto.  The exchange of notes shall specify the authority in the territory responsible for the measure set forth in Article 9 of the Annex and the channels between the United States of America and the territory for transmissions pertaining to the extradition process, in lieu of those designated in the Annex. Such application may be terminated by either the United States of America or the European Union by giving six months' written notice to the other through the diplomatic channel, where duly confirmed between the United States of America and the United Kingdom in accordance with Article 20(2) of the Extradition Agreement.

4.      In accordance with Article 16 of the Extradition Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

5.      This Instrument shall not apply to requests for extradition made prior to its entry into force.

6.      (a) This Instrument shall be subject to the completion by the United States of America and the United Kingdom of Great Britain and Northern Ireland of their respective applicable internal procedures for entry into force.  The Governments of the United States of America and the United Kingdom of Great Britain and Northern Ireland shall thereupon exchange instruments indicating that such measures have been completed.  This Instrument shall enter into force on the date of entry into force of the Extradition Agreement.

(b)     In the event of termination of the Extradition Agreement, this Instrument shall be terminated and the 2003 Extradition Treaty shall be applied. The Governments of the United States of America and the United Kingdom of Great Britain and Northern Ireland nevertheless may agree to continue to apply some or all of the provisions of this Instrument.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at London, in duplicate, this 16 day of December 2004.

FOR THE GOVERNMENT OF
UNITED STATES OF AMERICA:

FOR THE GOVERNMENT OF
THE UNITED KINGDOM OF GREAT
BRITAIN AND NORTHERN IRELAND:

2

ANNEX

EXTRADITION TREATY
BETWEEN
THE GOVERNMENT OF THE UNITED STATES OF AMERICA
AND
THE GOVERNMENT OF THE UNITED KINGDOM OF GREAT BRITAIN AND
NORTHERN IRELAND

TABLE OF CONTENTS

| | |
|---|---|
| Article 1 | Obligation to Extradite |
| Article 2 | Extraditable Offenses |
| Article 3 | Nationality |
| Article 4 | Political and Military Offenses |
| Article 5 | Prior Prosecution |
| Article 6 | Statute of Limitations |
| Article 7 | Capital Punishment |
| Article 8 | Extradition Procedures and Required Documents |
| Article 8 *bis* | Sensitive Information in a Request |
| Article 9 | Authentication of Documents |
| Article 10 | Additional Information |
| Article 11 | Translation |
| Article 12 | Provisional Arrest |
| Article 13 | Decision and Surrender |
| Article 14 | Temporary and Deferred Surrender |
| Article 15 | Requests for Extradition or Surrender Made by Several States |
| Article 16 | Seizure and Surrender of Property |
| Article 17 | Waiver of Extradition |
| Article 18 | Rule of Specialty |
| Article 19 | Transit |
| Article 20 | Representation and Expenses |
| Article 21 | Consultation |
| Article 22 | Termination |

3

## Article 1
### Obligation to Extradite

The Parties agree to extradite to each other, pursuant to the provisions of this Treaty, persons sought by the authorities in the Requesting State for trial or punishment for extraditable offenses.

## Article 2
### Extraditable Offenses

1.      An offense shall be an extraditable offense if the conduct on which the offense is based is punishable under the laws in both States by deprivation of liberty for a period of one year or more or by a more severe penalty.

2.      An offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, participation in the commission of, aiding or abetting, counseling or procuring the commission of, or being an accessory before or after the fact to any offense described in paragraph 1 of this Article.

3.      For the purposes of this Article, an offense shall be an extraditable offense:

   (a)      whether or not the laws in the Requesting and Requested States place the offense within the same category of offenses or describe the offense by the same terminology; or

   (b)      whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being jurisdictional only.

4.      If the offense has been committed outside the territory of the Requesting State, extradition shall be granted in accordance with the provisions of the Treaty if the laws in the Requested State provide for the punishment of such conduct committed outside its territory in similar circumstances. If the laws in the Requested State do not provide for the punishment of such conduct committed outside of its territory in similar circumstances, the executive authority of the Requested State, in its discretion, may grant extradition provided that all other requirements of this Treaty are met.

5.      If extradition has been granted for an extraditable offense, it may also be granted for any other offense specified in the request if the latter offense is punishable by less than one year's deprivation of liberty, provided that all other requirements for extradition are met.

4

Article 3
Nationality

Extradition shall not be refused based on the nationality of the person sought.

Article 4
Political and Military Offenses

1.      Extradition shall not be granted if the offense for which extradition is requested is a political offense.

2.      For the purposes of this Treaty, the following offenses shall not be considered political offenses:

      (a)    an offense for which both Parties have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution;

      (b)    a murder or other violent crime against the person of a Head of State of one of the Parties, or of a member of the Head of State's family;

      (c)    murder, manslaughter, malicious wounding, or inflicting grievous bodily harm;

      (d)    an offense involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage;

      (e)    placing or using, or threatening the placement or use of, an explosive, incendiary, or destructive device or firearm capable of endangering life, of causing grievous bodily harm, or of causing substantial property damage;

      (f)    possession of an explosive, incendiary, or destructive device capable of endangering life, of causing grievous bodily harm, or of causing substantial property damage;

      (g)    an attempt or a conspiracy to commit, participation in the commission of, aiding or abetting, counseling or procuring the commission of, or being an accessory before or after the fact to any of the foregoing offenses.

3.      Notwithstanding the terms of paragraph 2 of this Article, extradition shall not be granted if the competent authority of the Requested State determines that the request was politically motivated. In the United States, the executive branch is the competent authority for the purposes of this Article.

5

4.    The competent authority of the Requested State may refuse extradition for offenses under military law that are not offenses under ordinary criminal law.  In the United States, the executive branch is the competent authority for the purposes of this Article.

### Article 5
### Prior Prosecution

1.    Extradition shall not be granted when the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested.

2.    The Requested State may refuse extradition when the person sought has been convicted or acquitted in a third state in respect of the conduct for which extradition is requested.

3.    Extradition shall not be precluded by the fact that the competent authorities of the Requested State:

      (a)    have decided not to prosecute the person sought for the acts for which extradition is requested;

      (b)    have decided to discontinue any criminal proceedings which have been instituted against the person sought for those acts; or

      (c)    are still investigating the person sought for the same acts for which extradition is sought.

### Article 6
### Statute of Limitations

The decision by the Requested State whether to grant the request for extradition shall be made without regard to any statute of limitations in either State.

### Article 7

### Capital Punishment

When the offense for which extradition is sought is punishable by death under the laws in the Requesting State and is not punishable by death under the laws in the Requested State, the executive authority in the Requested State may refuse extradition unless the Requesting State provides an assurance that the death penalty will not be imposed, or, if imposed, will not be carried out.

6

Article 8
Extradition Procedures and Required Documents

1.      All requests for extradition shall be submitted through the diplomatic channel.

2.      All requests for extradition shall be supported by:

(a)     as accurate a description as possible of the person sought, together with any other information that would help to establish identity and probable location;

(b)     a statement of the facts of the offense(s);

(c)     the relevant text of the law(s) describing the essential elements of the offense for which extradition is requested;

(d)     the relevant text of the law(s) prescribing punishment for the offense for which extradition is requested; and

(e)     documents, statements, or other types of information specified in paragraphs 3 or 4 of this Article, as applicable.

3.      In addition to the requirements in paragraph 2 of this Article, a request for extradition of a person who is sought for prosecution shall be supported by:

(a)     a copy of the warrant or order of arrest issued by a judge or other competent authority;

(b)     a copy of the charging document, if any; and

(c)     for requests to the United States, such information as would provide a reasonable basis to believe that the person sought committed the offense for which extradition is requested.

4.      In addition to the requirements in paragraph 2 of this Article, a request for extradition relating to a person who has been convicted of the offense for which extradition is sought shall be supported by:

(a)     information that the person sought is the person to whom the finding of guilt refers;

(b)     a copy of the judgment or memorandum of conviction or, if a copy is not available, a statement by a judicial authority that the person has been convicted;

(c)     a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; and

7

(d)    in the case of a person who has been convicted *in absentia*, information regarding the circumstances under which the person was voluntarily absent from the proceedings.

## Article 8 bis
### Sensitive Information in a Request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

## Article 9
### Authentication of Documents

Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall mean, for the United States, the United States Department of Justice; and, for the United Kingdom, the Home Office.

## Article 10
### Additional Information

1.    If the Requested State requires additional information to enable a decision to be taken on the request for extradition, the Requesting State shall respond to the request within such time as the Requested State requires.

2.    Such additional information may be requested and furnished directly between the United States Department of Justice and the Home Office.

## Article 11
### Translation

All documents submitted under this Treaty by the Requesting State shall be in English or accompanied by a translation into English.

## Article 12
### Provisional Arrest

1.    In an urgent situation, the Requesting State may request the provisional arrest of the person sought pending presentation of the request for extradition. A

8

request for provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and such competent authority as the United Kingdom may designate for the purposes of this Article.

2.    The application for provisional arrest shall contain:

(a)    a description of the person sought;

(b)    the location of the person sought, if known;

(c)    a brief statement of the facts of the case including, if possible, the date and location of the offense(s);

(d)    a description of the law(s) violated;

(e)    a statement of the existence of a warrant or order of arrest or a finding of guilt or judgment of conviction against the person sought; and

(f)    a statement that the supporting documents for the person sought will follow within the time specified in this Treaty.

3.    The Requesting State shall be notified without delay of the disposition of its request for provisional arrest and the reasons for any inability to proceed with the request.

4.    A person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the formal request for extradition and the documents supporting the extradition request as required in Article 8. For this purpose, receipt of the formal request for extradition and supporting documents by the Embassy of the Requested State in the Requesting State shall constitute receipt by the executive authority of the Requested State.

5.    The fact that the person sought has been discharged from custody pursuant to paragraph 4 of this Article shall not prejudice the subsequent re-arrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

Article 13
Decision and Surrender

1.    The Requested State shall promptly notify the Requesting State of its decision on the request for extradition. Such notification should be transmitted directly to the competent authority designated by the Requesting State to receive such notification and through the diplomatic channel.

9

2.      If the request is denied in whole or in part, the Requested State shall provide reasons for the denial.  The Requested State shall provide copies of pertinent judicial decisions upon request.

3.      If the request for extradition is granted, the authorities of the Requesting and Requested States shall agree on the time and place for the surrender of the person sought.

4.      If the person sought is not removed from the territory of the Requested State within the time period prescribed by the law of that State, that person may be discharged from custody, and the Requested State, in its discretion, may subsequently refuse extradition for the same offense(s).

## Article 14
### Temporary and Deferred Surrender

1.      If the extradition request is granted for a person who is being proceeded against or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution.  If the Requested State requests, the Requesting State shall keep the person so surrendered in custody and shall return that person to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by mutual agreement of the States.

2.      The Requested State may postpone the extradition proceedings against a person who is being prosecuted or who is serving a sentence in that State.  The postponement may continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

## Article 15
### Requests for Extradition or Surrender Made by Several States

1.      If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

2.      If the United Kingdom receives an extradition request from the United States and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

3.      In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

10

(a)     whether the requests were made pursuant to a treaty;
(b)     the places where each of the offenses was committed;
(c)     the respective interests of the requesting States;
(d)     the seriousness of the offenses;
(e)     the nationality of the victim;
(f)     the possibility of any subsequent extradition between the requesting
          States; and
(g)     the chronological order in which the requests were received from the
          requesting States.

## Article 16
### Seizure and Surrender of Property

1.      To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all items in whatever form, and assets, including proceeds, that are connected with the offense in respect of which extradition is granted. The items and assets mentioned in this Article may be surrendered even when the extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2.      The Requested State may condition the surrender of the items upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable. The Requested State may also defer the surrender of such items if they are needed as evidence in the Requested State.

## Article 17
### Waiver of Extradition

If the person sought waives extradition and agrees to be surrendered to the Requesting State, the Requested State may surrender the person as expeditiously as possible without further proceedings.

## Article 18
### Rule of Specialty

1.      A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:

(a)     any offense for which extradition was granted, or a differently denominated offense based on the same facts as the offense on which extradition was granted, provided such offense is extraditable, or is a lesser included offense;

(b)     any offense committed after the extradition of the person; or

(c)     any offense for which the executive authority of the Requested State waives the rule of specialty and thereby consents to the

11

person's detention, trial, or punishment. For the purpose of this subparagraph:

    (i)    the executive authority of the Requested State may require the submission of the documentation called for in Article 8; and

    (ii)    the person extradited may be detained by the Requesting State for 90 days, or for such longer period of time as the Requested State may authorize, while the request for consent is being processed.

2.    A person extradited under this Treaty may not be the subject of onward extradition or surrender for any offense committed prior to extradition to the Requesting State unless the Requested State consents.

3.    Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of the person to a third State, if the person:

    (a)    leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

    (b)    does not leave the territory of the Requesting State within 20 days of the day on which that person is free to leave.

4.    If the person sought waives extradition pursuant to Article 17, the specialty provisions in this Article shall not apply.

Article 19
Transit

1.    Either State may authorize transportation through its territory of a person surrendered to the other State by a third State or from the other State to a third State. A request for transit shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit shall be detained in custody during the period of transit.

2.    Authorization is not required when air transportation is used by one State and no landing is scheduled on the territory of the other State. If an unscheduled landing does occur, the State in which the unscheduled landing occurs may require a request for transit pursuant to paragraph 1 of this Article, and it may detain the person until the request for transit is received and the transit is effected, as long as the request is received within 96 hours of the unscheduled landing.

12

## Article 20
### Representation and Expenses

1.      The Requested State shall advise, assist, and appear on behalf of, the Requesting State in any proceedings in the courts of the Requested State arising out of a request for extradition or make all necessary arrangements for the same.

2.      The Requesting State shall pay all the expenses related to the translation of extradition documents and the transportation of the person surrendered.  The Requested State shall pay all other expenses incurred in that State in connection with the extradition proceedings.

3.      Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons under this Treaty.

## Article 21
### Consultation

The Parties may consult with each other in connection with the processing of individual cases and in furtherance of efficient implementation of this Treaty.

## Article 22
### Termination

Either State may terminate this Treaty at any time by giving written notice to the other State through the diplomatic channel, and the termination shall be effective six months after the date of receipt of such notice.

13